[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 199.]

THE STATE EX REL. ROY, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as *State ex rel. Roy v. Indus. Comm.*, 1998-Ohio-124.]

*Workers' compensation—Denial of application for permanent total disability compensation by Industrial Commission not an abuse of discretion when requirements of State ex rel. Noll satisfied.*

(No. 95-1934—Submitted May 26, 1998—Decided September 23, 1998.)

APPEAL from the Court of Appeals for Franklin County, No. 94APD08-1268.

————————————

{¶ 1} Appellant-claimant William F. Roy's 1986 workers' compensation claim has been allowed for "low back strain; lumbar disc disease; lumbar radiculopathy; hypertrophic spurring, left lumbar region." In 1993, he applied to appellee, Industrial Commission of Ohio, for permanent total disability compensation ("PTD"). In support, he submitted a letter from Dr. William Blake Selnick, which stated:

"I have taken care of Mr. Roy for a number of years, treating him for injuries sustained in a Workman's [*sic*] Compensation case. I feel that Mr. Roy for all intents probably falls under the definition of permanent total disability. During the day he sits around on the couch, watches television and eats his dinner. If he goes to the mailbox to get the mail, he says he frequently falls down because of pain and his legs giving way. * * *

"Inasmuch as he is illiterate, and unemployable, I feel that he falls under the guidelines of Ohio law indicating him to be permanently and totally disabled."

{¶ 2} Dr. Kenneth R. Hanington also examined the claimant. He wrote:

"The claimant is 5' 4 1/2 inches tall and weighs 284 pounds. Without his cane, he can heel and toe walk without difficulty. He has an antalgic gait that favors

the left side. He is able to attain a single leg stance. He can attain a quarter squat and arise from it without difficulty. His spine is straight and his pelvis is level. Sciatic notch compression produces gluteal pain on the left side, but no radicular complaints, and is negative on the right. With attempts at range of motion testing, the claimant stands mostly on his right leg, holding his left foot in an equinus posture. Forward flexion is 50 degrees. Extension is 0 degrees. Lateral rotation is 30 degrees bilaterally. Lateral bending is 20 degrees bilaterally. Range of motion testing is actively resisted in all planes. Of note, the claimant demonstrates a degree of fluidity throughout the remainder of the examination greater than that demonstrated with the specific range of motion testing. Motor strength is 5/5 in all major groups of the lower extremities. There is no evidence of atrophy. * * * Sensation is intact to light touch throughout both lower extremities. Deep tendon reflexes are 1+, and equal at the knee and ankle bilaterally. Straight leg raising in the seated position produces no complaints. In the recumbent position, straight leg raising is negative on the right and produces complaints of back pain on the left, without a radicular component * * *.

"At the completion of the portion of the examination, the claimant is able to assume the longseated position and lean forward to do a toe touch maneuver, coming within 6 inches of his toes, limited by abdominal girth. He demonstrates a degree of motion he is unable to attain while standing.

" * * *

"Opinion: The industrial injury does prevent the claimant from returning to his former position of employment. The claimant's condition is now permanent and he has reached maximum medical improvement * * *. The claimant's permanent partial impairment rating for his allowed conditions is 15% of the body as a whole. Considering this percentage of impairment, the claimant should avoid activities that involve repetitive bending, stooping, lifting, squatting, or carrying of weights in excess of 30-40 lbs. He should have no difficulty with the use of his

2

upper extremities, nor any difficulty with walking, sitting, or standing, as long as the latter two were not required constantly throughout the workday."

**{¶ 3}** Claimant also submitted a "psychological evaluation" from Joseph M. Carver, Ph.D. The report contains conflicting assessments of claimant's literacy. At one point Dr. Carver notes:

"Educationally, William completed the seventh grade * * *. When asked about leaving school early, he describes 'I went to work. I had to take care of the family'. William Roy quit at the age of sixteen, commenting 'I can read a little bit, I can get by.' Additional academic training is denied."

**{¶ 4}** Elsewhere, however, he cautions that claimant "may be moderately to severely impaired for written instructions." Dr. Carver ultimately concluded:

"William Roy is an individual with academic and intellectual limitations. With a rather normal work history, he apparently sustained an injury that now creates significant physical limitations. It is noted that he also experiences a moderate to high level of anxiety which is separate from his physical complaints. The level of anxiety present has been recognized by the attending physician, prescribing Buspar for anxiety and tension. It is noted however that the medication has not been effective in reducing the anxiety to a manageable level in this individual. As evidenced in this examination, anxiety symptoms continue to hinder normal social and personal functioning.

"On the positive side, psychological evaluation finds no evidence of a somatization or conversion disorder. In layman's terms, there is nothing 'in his head' about his physical difficulties. William Roy is preoccupied with his physical status but this is not unusual in chronic pain or disability situations. At times, as his stress increases, more generalized physical symptoms may be reported but these are related to anxiety and not the presence of a conversion reaction or mechanism.

"When an individual is seen for a psychological evaluation, rehabilitation issues must be addressed. In a review of previous jobs and job classifications, the

social history, and the medical/psychological evidence, we arrive at the conclusion that previous jobs were based on physical strength/agility, physical stamina, and were primarily unskilled labor. These jobs were in keeping with the existing intellectual and academic limitations. In short, William Roy has always made a living with the 'strong back' approach. With the 'strong back' now physically impaired, little is present intellectually or academically to serve as a foundation for rehabilitation efforts. As an example, the academic skill and foundation necessary for specialized training programs is lacking. With the loss of physical and medical stability, the major vocational asset is now lost. Thus, rehabilitation is highly unlikely until changes in the medical and physical status occur."

{¶ 5} It is important to note that no psychological conditions have been allowed in this claim.

{¶ 6} The commission denied PTD, writing:

"Dr. Joseph M. Carver, Psychologist, evaluated the claimant on 11/9/92 for the Bureau of Disability Determination. Dr. Carver opined that rehabilitation was unlikely. The report of Dr. Carver was considered but rejected for the reason that he considers the conditions [of] anxiety disorder and personality disorder which are conditions that are not recognized in this claim.

" * * *

"On 7/30/93, the claimant was examined by Kenneth Hanington, M.D., at the request of the Industrial Commission. Dr. Hanington opined that the industrial injury does prevent the Claimant from returning to his former position of employment. He further states that the Claimant should avoid activities that involve repetitive bending, stooping, lifting, squatting, or carrying weights in excess of 30 to 40 pounds. Dr. Hanington states that Claimant should have no difficulty with the use of his upper extremities nor any difficulty with walking, sitting or standing as long as the latter two are not required constantly throughout the work day.

"The Staff Hearing Officers find that Claimant is presently 45 years of age and was 37 years of age at the time of the industrial injury. Claimant has a 6th grade education and there is presently conflicting information on file as to the degree of Claimant's literacy. Although Dr. Carver advises that Claimant is unable to recite the alphabet, he also advises that Claimant is able to do some reading and writing, and that Claimant was able to secure a driver['s] license through taking a written test. The Staff Hearing Officers further find that Claimant's work history includes 14 years in the concrete industry, with two of those years being employed as a foreman.

"The Staff Hearing Officers find that Claimant's young age of 45 years is an asset which would assist the Claimant in acquiring the skills to perform different types of employment. The Staff Hearing Officers further find, that Claimant is able to perform a full range of sedentary and light work based upon the restrictions outlined by Dr. Hanington. The Staff Hearing Officers further find that no other medical report of file relates claimant's restrictions as [being] a result of the conditions that are recognized in this claim. The Staff Hearing Officers therefore find that Claimant is capable of sustained remunerative employment and that claimant is not permanently and totally disabled.

" * * *

"The report of Dr. Hanington was particularly relied upon."

{¶ 7} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying PTD. The court disagreed and denied the writ. This cause is now before this court upon an appeal as of right.

———————————

*Kondritzer, Gold, Frank & Crowley Co., L.P.A.*, and *Lane N. Cohen*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Steven P. Fixler*, Assistant Attorney General, for appellee.

_____

***Per Curiam.***

**{¶ 8}** There are two general components to a review of a PTD denial: (1) "some evidence" of a medical capacity for some sustained remunerative employment and (2) an adequate analysis of claimant's nonmedical factors. See *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E.2d 245. Because the present order satisfies both requirements, the judgment of the court of appeals is affirmed.

**{¶ 9}** Dr. Hanington's report, on which the commission relied, is "some evidence" of a medical ability to work, assessing a low fifteen percent impairment.

**{¶ 10}** Assessing the second element, we find the commission's nonmedical analysis acceptable as well. The commission was within its prerogative to find that claimant's age was an asset that countered the obstacles imposed by claimant's education. The commission assessed conflicting evidence about claimant's literacy and elected in favor of that which demonstrated some ability to read and write. This takes the case outside *State ex rel. Hall v. Indus. Comm.* (1997), 80 Ohio St.3d 289, 685 N.E.2d 1245, and *State ex rel. Hartness v. Kroger Co.* (1998), 81 Ohio St.3d 445, 692 N.E.2d 181, both of which held that illiteracy and a history of heavy labor can compel a PTD finding regardless of the claimant's age.

**{¶ 11}** We find, therefore, that the commission did not abuse its discretion in denying PTD.

**{¶ 12}** The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____

January Term, 1998