DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Joyce M. Ace (hereinafter "relator"), filed this original action in mandamus requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio (hereinafter "commission"), to vacate its order denying him permanent total disability compensation (hereinafter "PTD").
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached hereto as Appendix A.) The magistrate concluded the commission did not abuse its discretion in finding relator is able to perform the duties of her former position, and that relator was not permanently and totally disabled. Accordingly, it was the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 3} Relator filed an objection arguing the magistrate's decision was not supported by law or fact. Relator contends the commission improperly relied upon the report of Dr. Brown to find "some evidence" to support its decision. Relator also asserts the commission's denial of the PTD was improper because the commission did not evaluate vocational factors. Additionally, relator contends the commission did not properly evaluate relator's job description. Finally, relator maintains that the commission should have granted the deposition of Dr. Hyde, and without the deposition, the court improperly relied on a flawed report.
 {¶ 4} When the commission issues a decision it must specifically state what evidence it has relied upon as well as a brief explanation of why the claimant is or is not entitled to benefits. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203. Here, the commission specified it relied upon the reports of Drs. Brown, Lutz, and Hyde. The commission also states its reasons for denying the PTD. The Staff Hearing Officer found relator was able to return and perform the duties of her previous employment.
 {¶ 5} Dr. Brown opined relator was able to perform sedentary work. Dr. Brown stated relator's psychological condition would allow her to return to sustained remunerative employment. Dr. Hyde opined the claimant was able to return to her former position, and relator's former position was sedentary in nature. The claim that Dr. Hyde's report was defective because he did not review the deposition of Dr. Brown is without merit. Dr. Hyde's report was not based solely on Dr. Brown's report, nor did the deposition contradict his original findings. Thus, Dr. Hyde's report and any reliance he made upon Dr. Brown's report, is not defective. Under the standard established in Noll, supra, these reports clearly constitute "some evidence," upon which the commission could base its decision. Therefore, relator's objection is overruled.
 {¶ 6} Relator also objects to the fact the commission did not take into account vocational factors. However, no where does relator cite any case law or statute that requires the commission to take into account vocational factors when a claimant has been deemed capable of returning to their former employment. To the contrary, State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757, 762, establishes the opposite position. "If the [commission] finds that a person is medically able to return to [their] former position of employment * * * it is unnecessary to evaluate the non-medical factors as they are irrelevant * * *." Here, where the commission relied on the reports from experts, the commission has no need to take vocational factors into account. This is especially true where relator has provided no evidence demonstrating she cannot return to her previous employment.
 {¶ 7} Finally, relator objects that she was not given the chance to depose Drs. Hyde and Brown. Pursuant to Ohio Adm. Code 4121-3-09(A)(6)(c), the hearing administrator determines the reasonableness of a deposition request and grants or refuses the request. Ohio Adm. Code 4121-3-09(A)(6)(d) lists certain factors the hearing administrator may consider to determine reasonableness. Such factors include: (1) whether a substantial disparity exists between various medical reports on a contest issue; (2) whether one of the medical reports was relied upon to the exclusion of the others; and, (3) whether the request was made for harassment or delay. While the request was not made for the purpose of harassment or delay, there is very little disparity in the three reports and each report was relied upon in its own right. Under these circumstances it is completely within the purview of the hearing administrator to deny the request.
 {¶ 8} Following an independent review, pursuant to Civ.R. 53, we find the magistrate properly determined the pertinent facts and applied the appropriate law to them. Relator's objection to the magistrate's decision is overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained within. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objection overruled; writ of mandamus denied.
 BROWN and KLATT, JJ., concur. APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Joyce M. Ace, : Relator, : v. : No. 03AP-517 Toyota of Cincinnati Company and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on November 24, 2003 James A. Whittaker, LLC, and James A. Whittaker, for relator.
Jim Petro, Attorney General, and Paul H. Tonks, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 9} In this original action in mandamus, relator, Joyce M. Ace, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for permanent total disability ("PTD"), to grant depositions of two independent experts, and to hold a new PTD hearing.
Findings of Fact:
 {¶ 10} 1. In 1996, Joyce M. Ace ("claimant") sustained industrial injuries, and her workers' compensation claim was allowed for conditions of the right hip, thigh, hand, foot, ankle, and left shoulder, and for "mild aggravation of pre-existing depression and anxiety."
 {¶ 11} 2. In February 2001, claimant filed a PTD application, stating that she earned an associate's degree in 1989 and had worked as an auto title clerk.
 {¶ 12} 3. In June 2001, claimant was examined by a psychiatrist, Donald Brown, M.D., who found moderate impairment from the "mild aggravation of pre-existing depression and anxiety." He opined, among other things, that if claimant were asked to perform duties beyond her physical restrictions, she would appear more anxious and/or depressed with some distractibility. However, he concluded that the allowed condition would not prevent claimant from returning to sustained remunerative employment:
* * * I do not believe that her allowed mild aggravation of pre-existing depression and anxiety would prevent her from returning to her former position of employment or other forms ofsustained remunerative employment and that would depend upon physical factors. I do believe that due to all the factors noted above that she would have some functional limitations * * *.
(Emphasis added.)
 {¶ 13} Accompanying the narrative report was a checklist form on which Dr. Brown answered "Yes" when asked if claimant could return to her former position of employment or any other form of sustained remunerative employment. To explain these answers, Dr. Brown referred to his narrative report .
 {¶ 14} 4. In June 2001, claimant was examined by James T. Lutz, M.D., who set forth orthopedic findings and estimated impairment of 12 percent based on the foot and ankle, four percent based on the hip, and ten percent based on the shoulder, for a combined 24 percent impairment. Dr. Lutz completed a checklist indicating that claimant was capable of performing "sedentary work" as defined on the form.
 {¶ 15} 5. Claimant filed a vocational evaluation from Jennifer Stoeckel, Ph.D., who noted claimant's report that she had been unable to return to work as a title clerk and that she was unable to read at times due to vision loss caused by diabetic retinopathy.
 {¶ 16} 6. After the medical reports were filed, the commission submitted them to an independent vocational evaluator, William Hyde, Ph.D., who reported in July 2001 that, if the medical opinions of Drs. Brown and Lutz were accepted, claimant could perform clerical work such as the title clerk position that she previously performed and could also work as a sorter, assembler, inspector, machine engraver, etc.
 {¶ 17} 7. Claimant moved for leave to take the depositions of Drs. Brown, Lutz, and Hyde. In January 2002, a staff hearing officer ("SHO") granted leave to take Dr. Brown's deposition but denied deposition of the other two independent experts.
 {¶ 18} 8. In May 2002, claimant took the deposition. Regarding the yes/no question on the checklist, Dr. Brown explained that the form asks a negative question and that his intent in answering the question about "any" sustained remunerative employment was to indicate that the allowed condition does not exclude all forms of sustained remunerative employment — not to indicate that the injured worker can perform every kind of sustained remunerative employment. Dr. Brown explained that "moderate" impairment means that claimant has some limits of her ability to function, and he acknowledged that there were jobs claimant could not perform, such as the job of air traffic controller. Dr. Brown explained that claimant would do better with more routine work rather than complex, demanding work. Also, he agreed that claimant's speed and pace could be affected by her allowed condition. With regard to claimant's physical condition and perceived pain, Dr. Brown stated that he could see some "attendance issues" but could not quantify them. He accepted, however, that claimant's depression and anxiety could be a factor regarding attendance.
 {¶ 19} With respect to claimant's former employment, Dr. Brown described his understanding of her job, stating in part:
* * * I think she said she was — did auto titles. Let me go back. Title clerk in automobile dealership. So filling out paperwork related to these titles * * *.
* * *
* * * I don't know what all they do. I assume they do the paperwork that gets you a new set of plates after you get your temporary plates.
* * *
* * * I wouldn't know how many [titles] she did in a day and I don't know the size of the dealership she was working at. * * *
 {¶ 20} 9. In July 2002, the application was heard by an SHO, who denied PTD:
This order is based on the medical reports of Dr. Brown and Dr. Lutz and the vocational report of Dr. Hyde.
* * * Dr. Lutz * * * opined that the claimant has a 24% whole person impairment considering the allowed conditions. Dr. Lutz completed a Physical Strength Rating Form which he attached to his medical report wherein he indicated that the claimant is capable of performing sedentary employment. Sedentary work is defined on that form as meaning the ability to exert up to 10 pounds of force occasionally and a negligible amount of force frequently. It further involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
* * * Dr. Brown opined that the allowed psychological condition would not prevent the claimant from returning to her former position of employment or any other form of sustained remunerative employment that she is otherwise qualified to perform. The claimant deposed Dr. Brown to clarify his opinion.Dr. Brown does not change or contradict his prior opinion thatthe claimant is able to return to her former position ofemployment or other forms of sustained remunerative employment.
* * * Dr. Hyde opined that considering the residual functional capacities as expressed by Dr. Lutz and Dr. Brown, the claimant is able to return to her former position of employment as a title clerk.
The Staff Hearing Officer finds that the claimant is able to return to and perform the duties of her former position of employment as a title clerk for an automobile dealership considering the allowed orthopedic and psychological conditions in the claim. In that the Staff Hearing Officer finds that the claimant is able to return to her former position of employment, her application for permanent and total disability compensation is denied.
(Emphasis added.)
Conclusions of Law:
 {¶ 21} In this original action, claimant raises six issues. In regard to the PTD order, claimant argues that the reports of Drs. Lutz, Hyde, and Brown are defective as a matter of law and cannot constitute "some evidence" on which the commission could rely. Further, claimant argues that, even if Dr. Brown's opinion can constitute "some evidence," the commission nonetheless failed to state that it considered all his comments regarding claimant's symptoms, such as a reduced capacity for concentration, etc. Last, claimant argues that the commission had a legal duty to grant depositions of Drs. Lutz and Hyde.
 {¶ 22} It is well established that, when the commission considers PTD, the issue is whether claimant is able to perform any sustained remunerative employment. State ex rel. Domjancicv. Indus. Comm. (1994), 69 Ohio St.3d 693. Where the claimant is medically unable to perform the prior employment but has a residual medical capacity to work, the commission first determines the residual medical capacity and then considers whether age, education, work history, etc., will permit the claimant to perform some type of sustained remunerative employment within that capacity. State ex rel. Stephenson v.Indus. Comm. (1987), 31 Ohio St.3d 167. However, where the claimant is medically able to engage in the former work, the commission may deny PTD without evaluating vocational factors.State ex rel. Speelman v. Indus. Comm. (1992),73 Ohio App.3d 757, 762.
 {¶ 23} For purposes of identifying a claimant's level of medical capacity, the Ohio Administrative Code set forth five categories of work — sedentary, light, medium, heavy, and very heavy. Sedentary work is defined as follows:
"Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally * * *.
Ohio Adm. Code 4121-3-34(B)(2)(a).
 {¶ 24} The Ohio Supreme Court has instructed that the commission must unequivocally identify the type of work that the claimant can perform:
* * * A clear indication by the commission of the residual medical capacities it believes the claimant to possess is vital to a nonmedical review, for it is within this framework that vocational factors are analyzed. The lack of a high school diploma may be far less significant to a claimant who is still capable of physical labor than to a claimant who is now limited to desk work.
* * * The commission in this case expressly accepted two medical conclusions: (1) that claimant was limited to light work and (2) that claimant could lift up to fifty pounds. However, these findings are inconsistent. If claimant can lift up to fifty pounds, he is capable of more than light work. He would be excluded only from heavy labor — sedentary, light, and medium work would be within his abilities.
* * * If claimant can do all but the heaviest work, then his background may be a minimal impediment to a return to work. If claimant is limited to light work, however, then his background might preclude employment.
State ex rel. Corona v. Indus. Comm. (1998),81 Ohio St.3d 587, 589.
 {¶ 25} Further, it is settled that the commission may find that a claimant can perform sustained remunerative employment even where the claimant cannot perform a full range of sedentary work. For the commission to conclude that a claimant can perform "sedentary work," it is sufficient if there are some sedentary jobs that the claimant can perform; it is not necessary that the claimant be able to perform all jobs within the sedentary category. See State ex rel. Wood v. Indus. Comm. (1997),78 Ohio St.3d 414, 418. See, also, State ex rel. Roy v. Indus.Comm. (1998), 83 Ohio St.3d 199, 203; State ex rel. Allen v.Cleveland Bd. of Edn. (1997), 79 Ohio St.3d 197, 199-200.
 {¶ 26} Likewise, it is settled that the commission may find a claimant able to perform sustained remunerative employment even where the claimant cannot perform a full-time job. State ex rel.Toth v. Indus. Comm. (1997), 80 Ohio St.3d 360, 362 (stating that part-time work constitutes sustained remunerative employment). Therefore, where a claimant lacks the physical or emotional capacity to perform full-time work but is capable of working on a part-time basis, the commission has discretion to deny PTD compensation. Id.; State ex rel. DeSalvo v. May Co.
(June 29, 1999), Franklin App. No. 98AP-986, affirmed (2000),88 Ohio St.3d 231.
 {¶ 27} In addition, the magistrate notes that the "former position of employment" is not necessarily limited to the exact same job at which the claimant was working when injured. Rather, the commission, in determining whether a person can return to his or her "former position of employment," may consider whether the claimant is capable of returning to the same type of job for some other employer. See, generally, State ex rel. McCoy v. DedicatedTransport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305 (involving temporary total compensation but indicating that the meaning of "former position of employment" is not necessarily limited to the specific job at which claimant was injured, depending on the context in which the term is used).
 {¶ 28} Last, the magistrate notes that it is well settled that, in a decision denying PTD compensation, the commission is not required to identify specific jobs that the claimant can perform. E.g., State ex rel. Pruett v. Indus. Comm., Franklin App. No. 02AP-385, 2002-Ohio-7362, at ¶ 25; State ex rel. Fosterv. Indus. Comm. (Dec. 26, 1989), Franklin App. No. 88AP-793.
 {¶ 29} In the order at issue here, the commission concluded that claimant had the medical/functional capacity to perform sedentary work, relying on Dr. Lutz's opinion with regard to the physical conditions and on Dr. Brown's opinion with regard to the psychological condition. The magistrate finds no defect in either opinion that would require the court to bar it from evidentiary consideration.
 {¶ 30} Claimant argues that Dr. Lutz's report is defective as a matter of law because, after discussing his clinical findings, Dr. Lutz simply opined that claimant was limited to "sedentary work" as defined on the checklist and estimated a percentage of impairment. Claimant asserts that, for a medical report to constitute evidence on which the commission may rely, the physician is required to set forth detailed restrictions for the arms, legs, hands, feet, spine, etc. Although the magistrate agrees that a medical report — whether submitted on behalf of a claimant, employer, or the commission — is far more informative when the physician gives a detailed opinion as to specific functional restrictions, the magistrate is aware of no authority that requires the commission to disqualify a medical report that identifies the worker's exertional category as defined in the Ohio Administrative Code and does not include additional opinions regarding specific restrictions on bending, walking, sitting, reaching, standing, and so forth.
 {¶ 31} Claimant argues that Dr. Brown's report is defective as a matter of law because he lacked an adequate understanding of the job at which claimant was injured. However, Dr. Brown's narrative report indicates that claimant was employed "as a title clerk at an automobile dealership," which is a correct statement according to the record. He also noted in his narrative report that claimant used a computer and worked with tax tables. In his deposition, Dr. Brown indicated his belief that claimant's work involved filling out forms and processing paperwork regarding auto titles.
 {¶ 32} The magistrate concludes that claimant has not proved that Dr. Brown's understanding of the former employment was materially inaccurate. Claimant cites no job description or other evidence to establish claimant's specific duties. Further, the magistrate rejects the argument that Dr. Brown's report is stripped of evidentiary value because he did not know the number of forms that claimant processed every day in her former job. Claimant cites no evidence showing the actual production levels, nor does claimant present evidence to prove that the work of a title clerk at an auto dealership involves complex tasks of a demanding, high-stress nature. Therefore, although Dr. Brown agreed that claimant's symptoms would increase if production demands increased, the magistrate rejects the argument that Dr. Brown's report must be removed from evidence because he could not quantify the production levels of claimant's former job.
 {¶ 33} Second, the magistrate rejects the argument that Dr. Brown's conclusions are inconsistent with the body of his report. Although several pages of his report were devoted to reciting claimant's statements during the interview, a physician's recitation of asserted symptoms and incapacities is not equivalent to a statement of medical findings. When reporting claimant's assertions, Dr. Brown was not making findings of fact. Claimant has not established that his conclusions were contrary to his findings.
 {¶ 34} With regard to Dr. Hyde, claimant argues that his vocational evaluation is defective as a matter of law because his report was submitted in July 2001 before the commission granted a deposition of Dr. Brown. Claimant argues that Dr. Hyde's evaluation must be removed from evidentiary consideration because he did not have the opportunity to consider Dr. Brown's deposition testimony.
 {¶ 35} The magistrate rejects this argument for several separate reasons. First, the record gives no indication that, following the deposition, claimant asked that a transcript be submitted to Dr. Hyde for a supplemental report, nor is there evidence that claimant otherwise sought to have a new employability assessment that included consideration of the deposition transcript.
 {¶ 36} A review of the usual sequence for processing a PTD application shows that, first, the parties submit their medical evidence. After all parties have filed medical evidence, the commission refers the claimant to its own medical specialists for examination. After these specialists file their reports, the commission submits all the medical reports to an independent vocational consultant for an employability evaluation. See Ohio Adm. Code 4121-3-34(C). In the present action, the record indicates that the commission followed the usual sequence but that, after Dr. Hyde submitted his vocational evaluation, Dr. Brown's deposition was authorized, and his testimony was added to the file after all the other experts had rendered opinions.
 {¶ 37} Claimant insists that Dr. Hyde's report is defective because it does not include a consideration of Dr. Brown's deposition transcript, which was filed after Dr. Hyde had completed his report. However, during the administrative proceedings, claimant's counsel had reason to know that, following the deposition, there would be no automatic re-referral of the file to the commission's vocational evaluator. Nonetheless, claimant did not request a follow-up evaluation by Dr. Hyde after the deposition was taken.
 {¶ 38} It appears clear that, where a doctor's deposition is taken after the completion of the commission's employability assessment, any party who believes that the doctor has contradicted (or withdrawn) a material finding or opinion, may ask the commission to resubmit the medical file to the vocational evaluator for a supplemental report or may request a new vocational report. Likewise, any party who believes that, due to intervening events, the report of a commission specialist or vocational evaluator is now materially incomplete or now lacks an adequate foundation, may ask the commission to resubmit the matter to the expert for a follow-up evaluation. In the present case, however, no request was made for a supplemental report or a new report.
 {¶ 39} Moreover, the magistrate agrees that Dr. Brown, in his deposition, did not contradict the key opinion he had stated in his narrative report, which was that claimant's allowed condition of mild aggravation of pre-existing depression and anxiety would not prevent her from "returning to her former position of employment or other forms of sustained remunerative employment." Further, upon review of the narrative report and deposition transcript, the magistrate finds no material divergence between the contents of the report and the deposition testimony. In the written report, Dr. Brown indicated that claimant showed symptoms of depression and anxiety at times, but that overall she could work as a title clerk or engage in some other work, and he explicitly acknowledged that claimant had functional limitations that would be aggravated if she were asked to work beyond her physical restrictions:
* * * She related in an open, cooperative and friendly manner and I felt she handled the interpersonal aspect of the examination well. She was somewhat easily distracted at times and somewhat frustrated in recalling names but was eventually able to do so in each situation. She was able to chuckle in situations where appropriate. Speech was coherent, spon-taneous and goal directed. There was no evidence of a thought disorder nor history of hallucinations or delusions. Affect was in the normal range and consistent with the content of thought. I felt there was some effective indications of anxiety and depression. She describes herself as significantly frustrated by her limitations. She describes significant developmental trauma. She was oriented to person, place, time and purpose of the examination. She seemed to be of average intelligence and capable of good judgement. She is able to comprehend and reason. Her attention span and ability to concentrate were within normal limits. Memory was intact for recent and remote events despite her mild distractibility. There was no evidence of organicity.
DISCUSSION:
Mrs. Ace indicates that she experienced significant develop-mental trauma. * * * She is now frustrated not only by the chronic pain but moreso [sic] by the limitation that her injury has caused for her. I think that all of these factors are [con]tributing to her current anxiety and depression and it is clear that she went into a very severe depression and withdrawal following the death of her husband but is now doing much better with respect to his loss and also the loss of her mother. Her one brother died in 1966 from complications of diabetes which was another loss for her. I do not believe that her allowed mild aggravation of pre-existing depression and anxiety would prevent her from returning to her former position of employment or other forms of sustained remunerative employment and that would depend upon physical factors. I do believe that due to all the factors noted above that she would have some functional limitations if she felt she was being asked to do something physically that was beyond her capability and at these points in time she probably would appear more anxious and/or depressed with some distractibility.
 {¶ 40} In his deposition, Dr. Brown again acknowledged that claimant had functional limitations due to the allowed psychological condition. He again indicated that claimant could perform some other jobs, but he clarified specific types of jobs she could and could not perform. The magistrate finds no material divergence between Dr. Brown's written report and deposition testimony that would render Dr. Hyde's vocational analysis defective as a matter of law. The magistrate agrees that, if Dr. Brown in deposition had disavowed his written opinion that claimant had the medical capacity to perform clerical work involving auto titles at an auto dealership or other forms of work, then the medical basis of the vocational opinion would be destroyed with respect to assessments based on Dr. Brown's opinion. Dr. Brown, however, did not disavow or contradict the opinion he had previously stated in his narrative report.
 {¶ 41} The problem, of course, is the checklist form. During his deposition, however, Dr. Brown explained about the awkward wording on the form and the ambiguity of a "no" answer, and the magistrate finds his explanation reasonable. The question on the form was as follows:
Based on the impairment resulting from the allowed/alleged psychiatric/psychological condition(s), can this claimant meet the basic mental/behavioral demands required:
* * *
To perform any sustained remunerative employment?
 {¶ 42} During the deposition, Dr. Brown explained his concerns about the phrasing of this yes/no question. The magistrate agrees that a "no" answer to this question suggests that, due to the allowed condition, the claimant cannot meet the basic demands of any employment — that she can perform no
jobs. In this case, although Dr. Brown answered "no," he immediately clarified his answer by referring to his written report for further explanation. The magistrate concludes that any ambiguity in the answer on the checklist was cured by the accompanying narrative discussion and further clarified by the deposition testimony.
 {¶ 43} The commission was within its discretion to conclude that Dr. Brown did not "change or contradict his prior opinion that the claimant is able to return to her former position of employment or other forms of sustained remunerative employment." Dr. Brown had stated unambiguously in his narrative report that the allowed condition would not prevent claimant from working as an auto title clerk "or other forms of sustained remunerative employment," and his deposition testimony did not contradict that opinion, on which the commission relied.
 {¶ 44} Further, it is important to note that the commission never reached a conclusion that claimant could perform any and all jobs in the labor market. Thus, even if Dr. Brown had stated such an opinion (which the magistrate believes he did not), the commission did not adopt or rely on that part of his report. The commission reached only the conclusion that claimant could work as an auto title clerk. That conclusion was supported by Dr. Brown's written report and by his deposition testimony.
 {¶ 45} Next, the magistrate addresses the argument that, even if Dr. Brown's opinion can constitute "some evidence," the commission nonetheless failed to state in its order that it considered all his comments regarding claimant's symptoms and limitations, such as a reduced capacity for concentration, etc. The magistrate concludes, however, that the commission does not have a legal duty to recite in its order the specific symptoms and findings noted in a medical report.
 {¶ 46} With regard to the contents of a commission order, the law is clear that the commission is not required to list all the evidence it considered in order to establish that it gave full and fair consideration to all the evidence. E.g., State ex rel.Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575. The commission is not required to explain why it accepted some evidence and rejected other evidence. Id. Similarly, the commission is not required to list all the contents of a medical report in order to establish that it considered all the contents fully. The commission is merely required to make findings of fact, cite some evidence to support its findings, and set forth a brief explanation of its rationale. State ex rel. Noll v. Indus.Comm. (1991), 57 Ohio St.3d 203. The courts presume that the commission has considered all the evidence in good faith unless the relator proves a failure of that duty by pointing to specific evidence demonstrating a failure of that duty. State ex rel.Lovell v. Indus. Comm. (1996), 74 Ohio St.3d 250.
 {¶ 47} Here, claimant argues that the commission should have explicitly set forth that it was aware from Dr. Brown's report that claimant had psychological symptoms and limitations. However, there is no legal duty enforceable by writ of mandamus that requires that the commission must recite details from a doctor's report to establish that it gave full consideration to the contents. The commission's citations to the evidence and its findings of fact, together with its brief rationale, were sufficient to satisfy Noll, supra. See, generally, State exrel. Records v. Indus. Comm. (1996), 74 Ohio St.3d 256, 259;State ex rel. West v. Indus. Comm. (1996), 74 Ohio St.3d 354,356.
 {¶ 48} Next, the magistrate addresses the order denying permission to take two depositions. R.C. 4123.09 provides that parties may take depositions only with permission. In Ohio Adm. Code 4121-3-09(6), the administrative code sets forth a procedure for requesting a deposition and provides that the factors for considering a request "include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of thers, and whether the request is for harassment or delay."
 {¶ 49} In State ex rel. Cox v. Greyhound Food Mgt., Inc.,95 Ohio St.3d 353, 2002-Ohio-2335, the Ohio Supreme Court clarified the standard for granting deposition requests. The court pointed out that, at the time the commission decides whether to permit a deposition, it cannot know which medical reports will be relied upon to the exclusion of others at the eventual hearing. In addition, a substantial disparity between percentage figures may be irrelevant when the disputed issue is not the claimant's percentage of disability. Id. at 355. Moreover, the court noted that substantial disparities in the evidence are commonplace in PTD cases and that, in a disputed disability matter, one of the primary purposes of holding a hearing is to present and debate the relative strengths and weaknesses of the medical reports. The court further observed that the enumerated factors for determining the reasonableness of a deposition were not exclusive and that, in some cases, it would be more appropriate to consider whether there is a defect in the report that can be cured by a deposition and whether the hearing itself is an equally reasonable option for resolving the questions.
 {¶ 50} In the present action, the commission authorized Dr. Brown's deposition but denied depositions of Drs. Lutz and Hyde. The alleged defect in Dr. Lutz's report was that he failed to provide sufficient information about claimant's medical status and capacity to permit a vocational evaluator (whether the commission or a vocational consultant) to determine whether the claimant could perform sustained remunerative employment. Claimant argues that Dr. Lutz, in describing his clinical findings in the narrative report and then stating that claimant could perform "sedentary" work as defined, failed to provide adequate information upon which a vocational evaluator could determine which specific jobs the claimant could perform in the sedentary category. However, as stated above, the commission has no legal duty to enumerate specific jobs the claimant can perform.
 {¶ 51} Further, as discussed above, there was no defect in Dr. Lutz's report that would require a deposition to cure it. The fact that Dr. Lutz did not delineate specific capacities for bending, walking, fine manipulation with the hands, etc., was a feature of his report that could be presented to the finder of fact in argument as a weakness, but it is not a feature constituting a defect that required a deposition or an exclusion from evidentiary consideration.
 {¶ 52} Also, the magistrate finds no defect in Dr. Hyde's report that required the commission as a matter of legal duty to exclude it from consideration, as discussed above. For the same reasons as already discussed, the magistrate finds no defect in Dr. Hyde's report that imposed a duty on the commission to authorize a deposition.
 {¶ 53} In summary, the magistrate concludes that the commission's determin-ation that claimant retained the medical and vocational capacity to work as an auto title clerk was supported by "some evidence" in the record and that the commission's explanation was sufficient to satisfy the requirements of Noll, supra. Accordingly, the magistrate recommends that the court deny the requested writ of mandamus.
 /S/ P.A. Davidson
P.A. DAVIDSON MAGISTRATE