DECISION
{¶ 1} Relator, Steven E. Nickoli, has filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its order which denied him permanent total disability ("PTD") compensation.
 {¶ 2} In accord with Loc. R. 12, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which contains detailed findings of *Page 2 
fact and conclusions of law. The magistrate's decision includes a recommendation that we grant a limited writ of mandamus. (Attached as Appendix A.)
 {¶ 3} Counsel for the commission has filed objections to the magistrate's decision. Counsel for Nickoli has filed a memorandum in response. The case is now before the court for review.
 {¶ 4} The commission submits three specific objections:
 Objection 1: The commission's determination of residual functional capacity is complete as long as it is found that a claimant can perform "some" sustained remunerative employment.
 Objection 2: In the absence of an obvious inconsistency, the court should rely on the expertise of the doctor.
 Objection 3: The Industrial Commission is not required to list any jobs which a claimant could perform in denying an application for PTD compensation.
 {¶ 5} The three objections do not really address the critical problems with the staff hearing officer's ("SHO") order denying PTD compensation. The SHO did not fully address Nickoli's residual medical capacity before applying the non-medical, or State ex rel. Stephenson v. Indus.Comm. (1987), 31 Ohio St.3d 167, analysis to his potential for sustained remunerative employment.
 {¶ 6} The medical information before the SHO did not support a finding that Nickoli could perform all light-duty jobs. The SHO should either clarify the range of light-duty jobs medically possible or should address the issue of whether Nickoli is capable of only sedentary work. Once that determination is made, then the nonmedical factors can be addressed. *Page 3 
 {¶ 7} The objections to the magistrate's decision are overruled. The findings of fact and conclusions of law in the magistrate's decision are adopted. We modify the findings of fact to correct the spelling of "medial" on pages four and six.
 {¶ 8} As a result, we issue a writ of mandamus which compels the commission to vacate its order denying PTD compensation for Steven E. Nickoli and compels the commission to fully address Nickoli's residual medical capacity in accord with State ex rel. Corona v. Indus.Comm. (1998), 81 Ohio St.3d 587, before computing an analysis of the effect of nonmedical disability factors.
Objections overruled; writ of mandamus granted.
 FRENCH, P.J., and McGRATH, J., concur. *Page 4 
 APPENDIX A MAGISTRATE'S DECISION Rendered September 29, 2008 IN MANDAMUS {¶ 9} In this original action, relator, Steven E. Nickoli, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him permanent total disability ("PTD") compensation and to enter an order granting said compensation. *Page 5 
Findings of Fact: {¶ 10} 1. Relator has two industrial claims. On November 19, 1996, relator sustained a sprain of his lumbar region while employed as a construction laborer. The November 19, 1996 injury is assigned claim number 96-602830.
 {¶ 11} 2. The second industrial injury occurred on January 18, 1999, while relator was also employed as a construction laborer. The claim (99-308559) is allowed for:
 * * * [S]prain of the left knee and leg, tear of the medial meniscus left knee current, sprain left cruciate ligament, synovitis and degenerative joint disease of the left knee.
 {¶ 12} 3. Relator has undergone five surgeries to the left knee. The first surgery occurred in February 1999. The last surgery, performed in January 2007, was a revision left total knee replacement.
 {¶ 13} 4. Earlier, on August 13, 2006, relator was examined at his own request by Richard Clark, M.D., who wrote:
 * * * On 12/16/03, Dr. Kolczun, performed a diagnostic arthroscopy of the left knee, left total knee replacement-unicompartmental, and minimally invasive, patellaplasty, left knee. He continued his therapy.
 Present Complaints:
 The Patient complains of constant pain and his knee gives out. He states that the following daily activities are limited due to his injury: walking, standing, kneeling, sitting, running, playing with his grandchildren, climbing a ladder, hunting, and ascending or descending stairs. He feels that the injury has interfered with his activities of daily living.
 Examination:
 Examination of the Left Knee.
 Flexion of 100 degrees.
 The Extension Lag of 5 degrees. *Page 6 
 Further examination finds there is tenderness and scarring present. Gait is noted to be antalgic. Muscle atrophy was also noted. There is instability and weakness noted in the knee joint.
 Opinion:
 Based on the review of the file, the claimant information, the physical examination, physical capacities evaluation and using the AMA Guidelines, 5th Edition as required, in my opinion the claimant is unable to perform substantial, gainful employment and therefore is permanently and totally disabled.
 {¶ 14} 5. Dr. Clark also completed a form captioned "Physical Capabilities Evaluation." On the form, Dr. Clark indicated that during an eight-hour workday, relator can stand and walk for 20 minutes. He can sit for one to three hours. He can lift six to ten pounds with either arm. Lifting as indicated should occur only "occasionally." Relator can use either hand for simple grasping or fine manipulation, but not for repetitive pushing or pulling.
 {¶ 15} According to Dr. Clark's completed form, relator can use either foot for "repetitive movements as in foot controls." He can bend and squat only occasionally. He cannot crawl or climb. He can reach above shoulder level with either arm.
 {¶ 16} 6. On October 23, 2007, at the commission's request, relator was examined by Kirby J. Flanagan, M.D. Thereafter, Dr. Flanagan issued a narrative report dated November 5, 2007 stating:
 In regard to claim number 99-308559, he has the following history. He was working inside a footer in the wintertime. A piece of rebar pinned him in the hole at the thigh and his left knee went all the way to the ground in valgus, he states. He was taken by EMS to Southwest General Hospital. He was placed in a knee immobilizer and on crutches. His follow up care was with Dr. Shine. He prescribed physical therapy. There was no improvement in his symptoms. He went on to *Page 7 
have surgery by Dr. Shine on February 18, 1999 for an arthroscopic partial medial menisectomy left knee and debridement of anterior cruciate ligament rupture left knee as well synovectomy. He underwent postoperative physical therapy for approximately 4 weeks. He was released to return to work. His symptoms in the left knee persisted. He then changed physician of record to Dr. Michael Kolczun who performed a diagnostic arthroscopy of the left knee and arthroscopic lateral menisectomy of the left knee on January 27, 2000. He was able to return to work following that surgery and worked until April of 2003. On April 24, 2003 he underwent an arthroscopic medial menisectomy and debridement of an osteochondral defect. He then underwent a fourth surgery on December 16, 2003 for left total knee replacement unicompartmental and patelloplasty left knee. He finally required a left total knee replacement on January 30, 2007. He states that the left knee swells daily for the last 3 months. The knee is stiff. He has pain that comes and goes in the left knee and varies with activity. It is worse primarily with prolonged standing, he reports. He has to use care in going down stairs and locks his left knee while doing so.
 In regard to claim number 96-602830, he has the following history. He has no recollection of this injury or any treatment for this injury. The file reflects that he was injured while pulling pieces of Masonite out of the mud and felt pain in his back and hips. The file reflects that he was treated by chiropractor Dr. Richard Pettit in November and December of 1996 for low back pain. There are no records of any further care after that time. He has no current complaints regarding his low back.
 * * *
 Left Knee Exam: Inspection of the left knee shows a midline 15.5-cm surgical scar that is well healed. There is mild edema at the left knee. There is no visible or palpable effusion. Range of motion of the left knee is flexion 95 degrees and extension zero degrees. Medical collateral ligaments and lateral collateral ligaments are intact to stress. Lachman's maneuver demonstrates 3-4 mm of anterior laxity. Strength in the left knee in flexion is 4+/5. Extension is 5/5. *Page 8 
 * * *
 In regard to the allowed conditions of sprain of left knee and leg, tear medial meniscus left knee-current, sprain left cruciate ligament, synovitis and degenerative joint disease left leg, it is my opinion that impairment is best determined by using Table 17-33 on page 547 of the AMA Guides to the Evaluation of Permanent Impairment, 5th edition. Using the impairment rating for total knee replacement gives him a 15% whole person impairment for these allowed conditions.
 In regard to the allowed condition of sprain lumbar region, it is clear that this allowed condition has resolved without residuals. He has no complaints regarding this injury. My examination of the lumbar region was entirely negative. Therefore, impairment is best described by DRE Lumbar Category I as described in Table 15-3 on page 384 of the AMA Guides to the Evaluation of Permanent Impairment, 5th edition. This results in a 0% whole person impairment for this allowed condition.
 In summary, he has a 15% whole person impairment for all of the allowed conditions in claim numbers 99-308559 and 96-602830.
(Emphases omitted.)
 {¶ 17} 7. On November 5, 2007, Dr. Flanagan completed a "Physical Strength Rating" form. On the form, Dr. Flanagan indicated by checkmark that relator is capable of light work. The form asks the physician to state "[f]urther limitations, if indicated." In response, Dr. Flanagan wrote "limited use left knee."
 {¶ 18} 8. In further support of his PTD application, relator submitted a vocational report dated December 20, 2007 from Daniel Simone, a vocational expert. In his report, Simone opined that relator "has experienced a total inability to perform substantial gainful activity on a sustained basis." *Page 9 
 {¶ 19} 9. Following a March 6, 2008 hearing, a staff hearing officer ("SHO") issued an order denying the PTD application. The SHO's order states:
 The Staff Hearing Officer finds that the claimant was injured on 11/19/1996 when while pulling some masonite out of mud, felt pain in his back and hips bilaterally.
 The Hearing Officer finds that this claim is allowed for sprain of the lumbosacral region and that there were no surgeries as a result of the injuries upon which this claim is predicated. The Hearing Officer finds that the claimant has not had any payment of permanent partial disability in this matter.
 The Hearing Officer further finds that the claimant was again injured on 1/18/1999 when while working at his construction assignment, a piece of rebar fell on his left leg.
 The Hearing Officer finds that this claim is allowed for sprain of the left knee and leg, tear of the medical meniscus left knee current, sprain left cruciate ligament, synovitis and degenerative joint disease of the left knee.
 As a result of the injury upon which this claim is predicated, the claimant had five surgeries which included a 2/18/1999 arthroscopic partial medial meniscectomy, a debridement of the anterior cruciate ligament rupture and synovectomy. The claimant again had surgery on 1/27/2000 which consisted of examination under anesthesia and arthroscopic lateral meniscectomy of the left knee. The claimant had another surgery on 4/24/2003 which consisted of arthroscopic medial meniscectomy with debridement and picking of the osteochondral defect, medial femoral condyle. The claimant had another surgery on 12/16/2003 which consisted of a diagnostic arthroscopy of the left knee, left total knee replacement/uncompartmental minimally invasive patellaplasty of the left knee. Then again on 1/30/2007 in which the claimant had a revision of the total left knee replacement.
 The Hearing Officer finds that in Dr. Flanagan's report of 11/05/2007, he indicates that an inspection of the claimant's left knee revealed a midline surgical scar that was well healed, that the claimant had mild edema of the left knee *Page 10 
with no visible of palatable effusion and that the claimant had a limited range of motion to said knee.
 The doctor found that the claimant's medial collateral ligaments and lateral collateral ligaments were intact and that a lachman maneuver demonstrated anterior laxity and that the claimant's strength was on flexion 4 by 5 and on extension 5 by 5.
 The Hearing Officer finds that the examination of the claimant's lumbosacral spine found no localized tender or spasm, no visible surgical scars and that the claimant had a slight range of motion limitation.
 As a result of Dr. Flanagan's examination he found that the claimant had reached maximum medical improvement for the two claims which are at issue and that the claimant had a 15% whole person impairment for the allowed conditions to the left knee and had a 0% whole person impairment for the allowed lumbosacral strain.
 Based on his assessment Dr. Flanagan found that the claimant was capable of doing light work.
 Light work means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
 The Staff Hearing Officer finds that Dr. Flanagan in his assessment indicates that the claimant has limited use of the left knee.
 Based on the fact that the claimant cannot be deemed permanently and totally disabled based solely on the allowed conditions in this claim, the Hearing Officer finds that an *Page 11 
examination of the claimant's non-medical disability factors is in order.
 The Staff Hearing Officer finds that the claimant's age is 60, indicates that the claimant has approximately five years of employment before retirement age is hit and therefore the claimant's age is a negative factor in obtaining entry-level positions.
 The claimant's education consist[ed] of completion and graduation of the 12th grade. The claimant indicated at hearing that he had no secondary training in computers or any other type of occupation.
 The claimant's work experience consisted of being a cement finisher for construction for approximately 32 years. During that time, the claimant indicates that he had to acquire technical knowledge and skills used in pouring concrete, reading blueprints and operating machinery. As indicated, the claimant's job responsibilities during this time includ[ed] reading and writing skills which involved reading blueprints. The claimant at sometime during his employment supervised up to three people on the job site.
 Although this denial of the claimant's request for permanent and total disability is relying on the report of Dr. Flanagan, the report of Dr. Kolczu[n], the employee's treating physician, indicates in his restriction that the claimant cannot do any lifting over 10 to 30 pounds, no kneeling, squatting, crawling or jumping. Dr. Kolczu[n] indicates that the claimant can only sit and walk for 20 minutes of a normal work week but that he can sit for one to three hours and as indicated can lift 10 to 30 pounds. Dr. Kolczu[n] indicated that the claimant can lift occasionally during the day and he can use his hands for simple grasping and fine manipulation but that there can be no pulling and pushing. The doctor does not indicate why the claimant cannot push and pull with his upper extremity.
 The Hearing Officer finds that based on an analysis of the claimant's non-medical disability factors, the claimant's age of 60, is as indicated a negative factor due to the fact that he is so close to the retirement age of 65. The Hearing Officer finds that the claimant's education is a positive factor. The Hearing Officer finds that the claimant's work experience is a positive factor in obtaining entry-level positions as well as *Page 12 
supervisory positions in the construction trade due to the fact that the claimant has been working in one skill for approximately 32 years as a cement finisher. Pursuant to the claimant's testimony at hearing and documentation in file the claimant is able to read and write blueprints, has supervised people in the past and therefore can obtain positions in the supervisory position. There is insufficient medical documentation for non-medical disability factors to warrant allowing this request for permanent and total disability, therefore, the claimant's request for permanent and total disability status which was filed on 6/15/2007 is denied and the claimant is not to be deemed permanently and totally disabled.
 {¶ 20} 10. On April 28, 2008, relator, Steven E. Nickoli, filed this mandamus action.
Conclusions of Law: {¶ 21} Because the commission's determination of residual functional capacity is incomplete, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 22} Ohio Adm. Code 4121-3-34 sets forth the commission's rules regarding the adjudication of PTD applications.
 {¶ 23} Ohio Adm. Code 4121-3-34(B)(2) sets forth five classifications of physical demands of work: (a) sedentary work; (b) light work; (c) medium work; (d) heavy work; and (e) very heavy work.
 {¶ 24} Pertinent here are the definitions of sedentary work and light work:
 "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for *Page 13 
brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.
 "Light work" means exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently, and/or a negligible amount of force constantly (constantly: activity or condition exists two-thirds or more of the time) to move objects. Physical demand may be only a negligible amount, a job should be rated light work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling or arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.
 {¶ 25} Ohio Adm. Code 4121-3-34(B)(4) provides:
 "Residual functional capacity" means the maximum degree to which the injured worker has the capacity for sustained performance of the physical-mental requirements of jobs as these relate to the allowed conditions in the claim(s).
 {¶ 26} Ohio Adm. Code 4121-3-34(D) provides the commission's guidelines for the adjudication of PTD applications.
 {¶ 27} Ohio Adm. Code 4121-3-34(D)(2)(b) states:
 (b) If, after hearing, the adjudicator finds that the injured worker, based on the medical impairment resulting from the allowed conditions is unable to return to the former position of employment but may be able to engage in sustained remunerative employment, the non-medical factors shall be considered by the adjudicator.
 {¶ 28} In State ex rel. Corona v. Indus. Comm. (1998),81 Ohio St.3d 587, 589, the court states:
 Absent a medical inability by claimant to do any sustained remunerative work, the commission in determining permanent total disability must consider two components — medical and nonmedical. State ex rel. Lawrence v. American *Page 14 
Lubricants Co. (1988), 40 Ohio St.3d 321[.] * * * A clear indication by the commission of the residual medical capacities it believes the claimant to possess is vital to a nonmedical review, for it is within this framework that vocational factors are analyzed. * * *
 {¶ 29} In Corona, the court explains that the commission accepted two medical conclusions: (1) that the claimant was limited to light work, and (2) that the claimant can lift up to 50 pounds. The court found these two findings to be inconsistent. If the claimant can lift up to 50 pounds, he is capable of more than light work. In Corona, the court returned the cause to the commission for further consideration and an amended order.
 {¶ 30} While the parties here do not cite Corona, that case sets forth a basic principle applicable here. The commission must make a clear indication of residual functional capacity.
 {¶ 31} In State ex rel. O'Brien v. Cincinnati, Inc., Franklin App. No. 07AP-825, 2008-Ohio-2841, a case cited by relator, this court had to determine whether Dr. Fossier's report constituted some evidence that the injured worker is capable of performing at a sedentary level despite the fact that Dr. Fossier indicated that the injured worker could perform at a light-duty level. Dr. Fossier's actual findings clearly placed the injured worker within the scope of sedentary work, but not within the scope of light work.
 {¶ 32} In O'Brien, this court had occasion to succinctly summarize applicable law:
 * * * Initially, it is important to note that a medical report that identifies the worker's exertional category as defined in the Ohio Administrative Code and does not include additional opinions regarding specific restrictions on sitting, lifting, standing, and so forth is still sufficient to constitute some *Page 15 
evidence. State ex rel. Ace v. Toyota of Cincinnati Co., Franklin App. No. 03AP-517, 2004-Ohio-3971, at ¶ 30. Thus, a medical report may constitute evidence on which the commission may rely when the physician simply opines the claimant was limited to "sedentary work" and provides no further details of the claimant's various functional restrictions. Id.
 On the other hand, the commission cannot simply rely on a physician's "bottom line" identification of an exertional category without examining the specific restrictions imposed by the physician in the body of the report. See State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm., Franklin App. No. 03AP-684, 2004-Ohio-3841; and State ex rel. Howard v. Millennium Inorganic Chemicals, Franklin App. No. 03AP-637, 2004-Ohio-6603. In both Owens-Corning and Howard, the doctor indicated that the injured worker could perform at a certain strength level, and yet, the rest of the report indicated greater restrictions on the injured worker that would actually render him incapable of performing the strength level work that the doctor had indicated he could perform. This court held in Owens-Corning and Howard that the commission cannot simply rely upon a determination that an injured worker can perform at a certain strength level; rather, the commission must review the doctor's report and actually make certain that any physical restrictions the doctor listed correspond with an ability to actually perform at the exertional level indicated by the doctor.
Id. at ¶ 9-10.
 {¶ 33} Here, the SHO quotes the full definition of light work found at Ohio Adm. Code 4121-3-34(B)(2)(b) and then indicates exclusive reliance upon the reports of Dr. Flanagan who opined that relator is capable of light work but has "limited use left knee."
 {¶ 34} As relator correctly observes, "limited use left knee" strongly suggests that relator would have physical difficulty with at least some types of light work set forth in the definition. For example, a job is viewed as light work, as opposed to sedentary, *Page 16 
when it requires walking or standing to a significant degree. "Limited use left knee" suggests that relator is unable to perform any light work requiring walking or standing to a significant degree.
 {¶ 35} Under the definition, a job is considered light work, as opposed to sedentary, when the job requires sitting most of the time but entails pushing and/or pulling of arm or leg controls. "Limited use left knee" suggests that relator would have difficulty pushing and/or pulling leg controls in a sitting position.
 {¶ 36} The SHO's order strongly suggests that Dr. Flanagan's reports permit a full range of light work despite Dr. Flanagan's finding of a limited use of the left knee.
 {¶ 37} Dr. Flanagan's physical strength rating report suggests that relator's physical capacity is less than the full range of light work set forth in the definition. Thus, reliance upon Dr. Flanagan's report required the SHO to further determine what types of light work, if any, relator can perform given the "limited use left knee."
 {¶ 38} Given that the commission abused its discretion in its determination of relator's residual functional capacity, this court need not determine whether the commission abused its discretion in its consideration of the nonmedical factors. Corona.
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order denying relator's PTD application and, in a manner consistent with this magistrate's decision, enter a new order adjudicating the PTD application. *Page 1