[Cite as *State ex rel. Hensley v. Indus. Comm.*, 2014-Ohio-5560.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Kenneth R. Hensley, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 13AP-757 |
| | : | |
| Industrial Commission of Ohio and Trans Fleet Enterprises Incorporated, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on December 18, 2014

*The Bainbridge Firm, LLC, Andrew J. Bainbridge, Christopher J. Yeager, Carol L. Herdman* and *Zachary L. Tidaback,* for relator.

*Michael DeWine*, Attorney General, and *Kevin J. Reis*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1}  Relator, Kenneth R. Hensley, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying his application for permanent total disability ("PTD") compensation, and to enter an order granting said compensation.

{¶ 2}  Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto.  The magistrate found that:  (1)

the report of Dr. Borrillo is some evidence upon which the commission could rely in determining that relator has the residual functional capacity to perform sedentary work; (2) relator has waived his right to challenge the report of Dr. Murphy in this action; and (3) the commission did not abuse its discretion in its consideration of the nonmedical factors. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed objections to the magistrate's decision. In his first objection, relator contends that the medical restrictions placed on relator by Dr. Borrillo indicate that relator is not capable of performing any reasonable range of sedentary work. Because he is restricted from performing above shoulder height tasks, and is unable to extend his neck to look upward, relator argues he is effectively precluded from performing all sedentary work. Therefore, relator argues that the commission abused its discretion by determining that relator was capable of sedentary work. We disagree.

{¶ 4} As noted by the magistrate, there is no obvious reason why an above shoulder restriction and the neck extension restriction would preclude relator from performing all sedentary work as defined by Ohio Adm.Code 4121-3-34(B)(2)(a). Therefore, we agree with the magistrate that Dr. Borrillo's report is some evidence supporting the commission's decision. The commission properly exercised its discretion in determining that relator's restrictions do not prevent him from performing all sedentary work. Accordingly, we overrule relator's first objection.

{¶ 5} In his second objection, relator contends that the magistrate erred when he found that relator waived his right to challenge Dr. Murphy's psychological report. We agree.

{¶ 6} Following a stipulated dismissal of the first mandamus action, this matter was remanded to the commission for a de novo administrative hearing before a different staff hearing officer. Because the hearing was de novo, there was nothing to prevent relator from challenging Dr. Murphy's report even if he failed to challenge the report in the previous administrative proceeding and/or the previous mandamus action. We also agree that relator challenged Dr. Murphy's report in the current mandamus action, although he presented very little argument in support of that challenge. For these reasons, we find that relator did not waive his challenge to Dr. Murphy's report.

{¶ 7} Nevertheless, relator has not demonstrated that the commission abused its discretion when it relied on Dr. Murphy's report in denying relator PTD compensation. The fact that Dr. Murphy's report conflicts with the psychological reports submitted by relator does not prevent the commission from relying upon Dr. Murphy's report. Dr. Murphy's report is still some evidence supporting the commission's decision.

{¶ 8} Relator also contends that Dr. Murphy's report is internally inconsistent, and therefore, cannot be relied upon by the commission. We disagree. Dr. Murphy's report adequately explains why his ultimate assessment of relator's psychological condition varies from some of the test results. Given this explanation, Dr. Murphy's report is not internally inconsistent.

{¶ 9} Although the magistrate erred when he found that relator waived his challenge to Dr. Murphy's report, that error is of no consequence. Because Dr. Murphy's report is some evidence upon which the commission could rely, the commission did not abuse its discretion. Therefore, we sustain relator's second objection, but nevertheless find that relator is not entitled to a writ of mandamus for the reasons discussed.

{¶ 10} In his third objection, relator contends that the magistrate erred by failing to find that the commission abused its discretion in its assessment of the nonmedical factors affecting relator's employability. We disagree.

{¶ 11} Relator argues that because he disputed the statement of a vocational rehabilitation counselor that relator obtained a two-year associate's degree in business management, the commission abused its discretion when it failed to obtain clarification of this issue. Apparently, relator admits he attended college, but contends he did not complete the two-year program. Relator also points to his IC-12 application where he indicated that the tenth grade is the highest grade he completed. Relator makes no attempt to explain how he was admitted to a two-year college associate's degree program if he only completed the tenth grade. Contrary to relator's contention, nothing required the commission to obtain clarification of this issue. The statement of the vocational rehabilitation counselor is some evidence supporting the commission's decision even if relator disputes it. Moreover, relator's educational background is just one of a number of nonmedical factors evaluated by the commission. Because the statement of the vocational

rehabilitation counselor is some evidence upon which the commission could rely, it did not abuse its discretion.  For this reason, we overrule relator's third objection.

{¶ 12} Following an independent review of this matter, we find that the magistrate has properly determined the facts, and we adopt the findings of fact as our own.  We adopt the magistrate's conclusions of law only to the extent specified.  In accordance with the magistrate's decision as modified herein, we deny relator's request for a writ of mandamus.

*Objections overruled in part and sustained in part,*
*writ of mandamus denied.*

TYACK and BROWN, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Kenneth R. Hensley, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No. 13AP-757 |
| | : | |
| Industrial Commission of Ohio and Trans Fleet Enterprises Incorporated, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 26, 2014

---

*The Bainbridge Firm, LLC, Andrew J. Bainbridge, Christopher J. Yeager,* and *Carol L. Herdman,* for relator.

*Michael DeWine*, Attorney General, and *Kevin J. Reis*, for respondent Industrial Commission of Ohio.

---

IN MANDAMUS

{¶ 13} In this original action, relator, Kenneth R. Hensley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the June 27, 2013 order of its staff hearing officer ("SHO") that denies his November 15, 2010 application for permanent total disability ("PTD") compensation, and to enter an order awarding the compensation.

Findings of Fact:

{¶ 14} 1. On March 6, 2001, relator sustained an industrial injury while employed as a truck driver for respondent TFE Logistics Group, Inc., a state fund employer. On that date, the truck relator was driving was struck by another vehicle.

{¶ 15} 2. The industrial claim (No. 01-333762) is allowed for:

> Sprain of neck; sprain thoracic region; concussion without coma; C5-C6 displacement; degenerative disc disease C4-C5, C6-C7, cervical; cervical spinal stenosis C4-5 and C6-7; depressive disorder; myofascial pain syndrome.

{¶ 16} 3. On October 27, 2010, treating psychologist Patrick Bentley, Ph.D., D.O., wrote:

> Unfortunately Kenneth's major depression is also a major depression resulting from multiple medical symptoms. Antidepressent medications can do some good in this condition but really never have enough of an effect to totally cause the depression to lift. This is unfortunate since his medical symptoms can probably never be resolved.
>
> In summary, Kenneth Hensley has a severe depression w/anhedonia, amotivation and ideas of chronisity that will not go away because they are based on his medical conditions. Because of this situation I believe that Kenneth Hensley is permanently and totally disabled as a result of his depressive disorder. With his depression and it's accompanying anhedonia and amotivation, it is unlikely that he will ever be able to participate in programs such as vocational rehabilitation.

{¶ 17} 4. On November 15, 2010, relator filed an application for PTD compensation. In support, relator submitted the October 27, 2010 report of Dr. Bentley. Relator did not submit any other medical reports.

{¶ 18} 5. On December 22, 2010, at the commission's request, relator was examined by psychologist Michael A. Murphy, Ph.D. In his 11-page narrative report dated December 29, 2010, Dr. Murphy opines that the percentage of permanent impairment is 14 percent due to the depressive disorder. He further opines that the depressive disorder "is of mild severity" and "does not preclude employment as a truck driver."

{¶ 19} 6. On December 29, 2010, Dr. Murphy completed a form captioned "Occupational Activity Assessment[,] Mental & Behavioral Examination." On the form,

Dr. Murphy indicated by his mark: "[T]his Injured Worker is capable of work with the limitation(s) / modification(s) noted below."

{¶ 20} In the space provided, Dr. Murphy responded: "See report. Repetitive. Non-complex. Normal climate of stress."

{¶ 21} 7. On December 29, 2010, at the commission's request, relator was examined by Kurt A. Kuhlman, D.O., who is board certified in physical medicine and rehabilitation. In his five-page narrative report, Dr. Kuhlman states:

> [Relator] is capable of sedentary work only. He has no functional mobility of his neck. He has limited use of his left upper limb. He is incapable of performing repetitive lifting. He is incapable of driving [a] truck. His restrictions will be permanent.

{¶ 22} 8. On December 29, 2010, Dr. Kuhlman completed a Physical Strength Rating form. On the form, Dr. Kuhlman indicated by his mark that relator is capable of sedentary work.

{¶ 23} 9. Following a March 2, 2011 hearing, an SHO issued an order denying the PTD application. The SHO stated reliance upon the reports of Drs. Murphy and Kuhlman. The SHO also addressed the non-medical disability factors.

{¶ 24} 10. On October 17, 2011, relator filed in this court a mandamus action challenging the commission's denial of his PTD application. The action (No. 11AP-886) was assigned to a magistrate of this court.

{¶ 25} 11. On July 20, 2012, this court's magistrate issued a magistrate's decision in case No. 11AP-886. The magistrate recommended that this court issue a writ of mandamus ordering the commission to vacate its SHO's order of March 2, 2011 and, in a manner consistent with the magistrate's decision, to enter a new order that adjudicates the PTD application. In the decision, the magistrate determined that Dr. Kuhlman's report cannot constitute some evidence upon which the commission can rely. The magistrate explained:

> It can be noted that Dr. Kuhlman did not indicate any exertional capacity up to ten pounds of force occasionally. Thus, the question here is whether, under Dr. Kuhlman's restrictions, relator can exert "a negligible amount of force frequently * * * to lift, carry, push, pull or otherwise move objects."

Given that relator "is incapable of performing repetitive lifting," the magistrate finds that relator cannot exert a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects.

Dr. Kuhlman's prohibition against all "repetitive lifting" strongly suggests that relator is incapable of exerting a negligible amount of force frequently, given that "frequently" means that the activity exists from one-third to two-thirds of the time.

Under the above analysis, Dr. Kuhlman's opinion that relator retains the capacity for sedentary work is inconsistent with his medical restrictions.

A medical report can be so internally inconsistent that it cannot constitute some evidence to support a commission decision. *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994); *State ex rel. Taylor v. Indus. Comm.*, 71 Ohio St.3d 582 (1995). Such is the case here. Dr. Kuhlman's reports cannot constitute some evidence upon which the commission can rely.

{¶ 26} 12. On August 28, 2012, in case No. 11AP-886, the parties, through counsel, filed a Civ.R. 41(A) stipulation of dismissal, stating:

In accordance with Civ.R. 41(A)(1)(b), the parties hereby stipulate that this action is dismissed with prejudice.

Upon dismissal of the above action, the Staff Hearing Officer order dated March 2, 2011 adjudicating the claimant's IC-2 Application for Permanent and Total Disability Compensation shall be vacated, and a new hearing scheduled before another Staff Hearing Officer on the issue of the claimant's IC-2 Application for Permanent and Total Disability Compensation filed November 15, 2010. The Industrial Commission shall select another physician, who shall conduct an examination of Hensley and issue a medical report concerning the issue of whether Hensley is permanently and totally disabled as a result of the allowed physical conditions in the claim. No other new or additional evidence will be submitted regarding the November 15, 2010 IC-2 application. The Staff Hearing Officer shall issue a new order on the merits of the claimant's IC-2 Application for Permanent and Total Disability Compensation filed November 15, 2010, which either grants or denies the requested compensation.

{¶ 27} 13. On August 30, 2012, in case No. 11AP-886, this court entered a journal entry of dismissal, accepting the August 28, 2012 stipulation of dismissal and dismissing the action with prejudice effective August 28, 2012.

{¶ 28} 14. On September 21, 2012, an SHO mailed an order that, pursuant to the stipulation of dismissal in case No. 11AP-886, vacates the SHO's order of March 2, 2011 that denied the PTD application. The SHO's order of September 21, 2012 further provides:

> It is ordered that the claim be referred to the Medical Services Department of the Industrial Commission to arrange for a new physician to conduct a medical examination of the claimant on the allowed physical conditions in the claim. The physician shall conduct an examination of the claimant and shall issue a medical report concerning the issue of whether claimant is permanently and totally disabled as a result of the allowed physical conditions in the claim. No other new or additional evidence will be submitted regarding the IC-2 Application for Permanent Total Disability Compensation filed on 11/15/2010.
>
> Thereafter, the claim shall be referred to the Hearing Administrator to schedule a hearing de novo before another Staff Hearing Officer to determine the merits of the Application for Permanent Total Disability Compensation filed on 11/15/2010.
>
> * * * It is also ordered that the medical report of Dr. Kurt Kuhlman dated 12/29/2010 shall not be considered in adjudicating the claimant's IC-2 Application for Permanent Total Disability Compensation filed on 11/15/2010.

{¶ 29} 15. On March 6, 2013, at the commission's request, relator was examined by Donato J. Borrillo, M.D. In his six-page narrative report dated March 28, 2013, Dr. Borrillo opined:

> In my medical opinion, the injured worker remains at [maximum medical improvement] for the allowed conditions in the present claim.
>
> The present claim is allowed for cervical (neck) sprain and degenerative disc disease C4-5, C6-7 with displacement at C5-6 and spinal stenosis at C4-5 and C6-7. He underwent surgical intervention and has reached a treatment plateau for these conditions. Taken as a region, these combined

conditions establish a DRE Cervical Category III eighteen percent (18%) whole person impairment, in accordance with Table 15-5 page 392.

* * *

In my medical opinion, Mr. Hensley is capable of performing sedentary work as defined by the *Dictionary of Occupational Titles.* His allowed cervical conditions also prevent him from performing above shoulder height tasks, and he is unable to extend his neck to look upward. Given his allowed conditions, no commercial driving is also recommended.

(Footnote omitted.) (Emphasis sic.)

{¶ 30} 16. On March 28, 2013, Dr. Borrillo completed a Physical Strength Rating form. On the form, Dr. Borrillo indicated by his mark that relator is capable of sedentary work. The form asks the physician to state: "Further limitations, if indicated." In response, Dr. Borrillo wrote in his own hand: "No commercial driving[,] no above shoulder height tasking, unable to extend neck."

{¶ 31} 17. By letter dated May 3, 2013, to the commission's hearing administrator, relator's counsel questioned Dr. Borrillo's report and requested a new commission medical examination. The letter argues:

> The injured worker is concerned that the opinion provided by Dr. Borrillo indicating that he is able to perform sedentary work, but is unable to perform any above-shoulder height tasks, would run afoul of [the] sedentary definition set forth under OAC Section 4121-3-34[B](2)(a). An injured worker must be able to exert up to ten pounds of force occasionally in order to lift or otherwise move objects. This would obviously include performing above-shoulder height tasks. If he is unable to perform this occasional or even frequent body movement for negligible weight, he does not fall into the sedentary category.

{¶ 32} 18. By letter dated May 10, 2013, the hearing administrator responded to the May 3, 2013 letter from relator's counsel:

> In his letter of May 3, 2013, the Injured Worker asserts that the inability to perform any above-shoulder height tasks, as found by Dr. Donato Borrillo in his March 26, 2013 examination runs "afoul of the sedentary definition set forth under OAC Section 4121-3-34[B](2)(a)." The Hearing

Administrator finds that the sedentary work classification is silent with respect to the ability to perform above-shoulder height tasks, and further, the inability to perform such tasks does not render an Injured Worker incapable of all sustained remunerative employment. The Injured Worker has the opportunity at hearing to enumerate the perceived flaws in Dr. Borrillo's report, and highlight the strengths of his own examiner's opinion.

[T]he Hearing Administrator finds that good cause for the scheduling of a new medical examination has not been established.

{¶ 33} 19. Following a June 27, 2013 hearing, an SHO issued an order denying the PTD application. The SHO's order explains:

After full consideration of the issue it is the order of the Staff Hearing Officer that the application filed 11/15/2010 for permanent total disability compensation is denied. This decision is based on the 12/29/2010 report of Michael Murphy, Ph.D., the 03/28/2013 report of Donato Borrillo, M.D., and consideration of the Injured Worker's non-medical disability factors.

Dr. Murphy evaluated the Injured Worker on 12/22/2010 for the allowed psychological condition, depressive disorder. This evaluation consisted of a clinical interview, psychological testing, and records review. Dr. Murphy found the allowed psychological condition had reached maximum medical improvement.

Dr. Murphy noted the validity criteria of the testing performed indicated a strong "fake bad" in which the Injured Worker exaggerated and distorted his problems. This indicated the Injured Worker's true level of problems or symptoms was likely to be less than was shown by test results.

Dr. Murphy concluded the allowed psychological condition resulted in mild impairments in the activities of daily living; adaptation (the ability to respond appropriately to changes in the work place); and concentration, persistence and pace. No impairment was found for social interaction. The whole person impairment for the depressive disorder was found to be 14%.

It was the opinion of Dr. Murphy that the Injured Worker actually had depression of mild severity which did not preclude employment or work at the former position of employment as a truck driver. The psychologist indicated the Injured Worker would function best in normal to low-stress conditions with simple work tasks. Specifically, Dr. Murphy recommended repetitive, non-complex work in a normal climate of stress.

The Injured Worker was evaluated by Dr. Borrillo on 03/26/2013 regarding the allowed physical conditions of this claim. Dr. Borrillo noted three cervical surgeries had been performed as part of this claim and also noted the Injured Worker underwent unrelated low back (L4-5) surgery in 2004. The evidence in file also references bladder surgery and coronary procedures.

It was the opinion of Dr. Borrillo that the allowed physical conditions of this claim had reached maximum medical improvement and resulted in 18% whole person impairment, all of which was attributable to cervical conditions recognized in this claim. Dr. Borrillo indicated the Injured Worker was capable of sedentary work which did not include tasks performed above shoulder height, extension of the neck upward, and commercial driving.

Ohio Administrative Code 4121-3-34[B](a)(a) indicates "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

It is significant to note the Injured Worker has presented no evidence which alleges he is permanently and totally disabled as a result of the allowed physical conditions. The only probative medical evidence which addresses the Injured Worker's physical capabilities, for the purpose of permanent total disability, is the 03/28/2013 report of Dr. Borrillo.

The 03/28/2013 report of Dr. Borrillo, which found the Injured Worker to be capable of sedentary work with

restrictions, is found persuasive. The restrictions of no tasks above shoulder height and no extension of the neck upward do influence the range of sedentary work the Injured Worker may perform. However, the Injured Worker has presented no vocational evidence which indicates these restrictions significantly compromise the range of sedentary work available to the Injured Worker.

The restriction of no commercial driving does not appear to impact the Injured Worker's ability to perform sedentary work. The Department of Transportation (DOT) classifies all truck driving as light level work or higher. Only two jobs, driver's license review officer and escort vehicle driver for the transport of mobile homes, are classified as sedentary work for general drivers. Again, the Injured Worker has presented no vocational evidence to demonstrate this restriction would significantly impact the Injured Worker's available range of sedentary work.

Similarly, the recommendations by Dr. Murphy for work which is repetitive, non-complex, and in a normal climate of stress do influence the range of sedentary work the Injured Worker may perform. No vocational evidence has been presented which evaluates these psychological restrictions alone, or in combination with the physical restrictions, to indicate the range of sedentary work available to the Injured Worker has been significantly compromised.

The opinions of Drs. Murphy and Borrillo are found persuasive. As the medical evidence is not dispositive of the permanent total disability issue, a discussion of the Injured Worker's non-medical disability factors is necessary. State ex rel. Stephenson v. Industrial Commission (1987), 31 Ohio St.3d 167.

The Injured Worker was born on 07/05/1957 and is currently 56 years of age. This is classified as a "person of middle age" and is found to be a vocationally-neutral factor. While some employers prefer an employee with more work life remaining, other employers prefer an employee with more work and life experiences.

The Injured Worker attended school into the tenth grade, leaving to have a child. He eventually obtained his GED in approximately 1993. The Injured Worker was certified in 1995 for a Class A commercial driver's license (CDL).

The Injured Worker also obtained a two-year Associate's Degree in Business Management. This education was not reported on the IC-2 application and the Injured [Worker] indicated on that form that he cannot read, write, or perform basic math very well. The associate's degree was reported to a vocational counselor in 2001.

This is classified as a "high school education or above" and is found to be a positive vocational factor. Generally, a person with a high school education has the ability in reasoning, arithmetic, and language skills to perform semi-skilled through skilled work.

The Injured Worker's relevant work history includes jobs primarily as a truck driver. This included jobs in the waste management industry where he performed maintenance on trucks and drove (skilled, medium); in the stone industry where he drove and ran drill and punch presses (semi-skilled, medium); in the brush industry where he drove, and stripped, polished and made brushes (semi-skilled, medium); and the former position of employment where he drove as well as loaded and unloaded trucks (semi-skilled, heavy).

The evidence in file also reflects the Injured Worker has experience as a salesman (skilled, light) and operating his own business in automobile sales (skilled, light) for approximately three years. This work history was not reported on the IC-2 application but was noted by a vocational counselor in 2001.

The Injured Worker's employment experience is found to be a positive vocational factor. It demonstrates the Injured Worker's ability to learn and perform a variety of semi-skilled and skilled work. The Injured Worker also has self-employment experience.

The restrictions imposed by Dr. Borrillo would preclude the Injured Worker's return to work at any of the jobs he previously performed. Therefore, the Injured Worker's effort to be vocationally retrained for less exertional work is a factor to be considered in this permanent disability determination.

The Injured Worker was referred to vocational rehabilitation in 2001 on two occasions. The 04/23/2001 closure report reflects the vocational rehabilitation file was closed without

participation as the Injured Worker was found to be medically unstable.

The Injured Worker underwent surgery on 06/21/2001 and was re-referred to vocational rehabilitation in September 2001. Initially work hardening and physical conditioning were scheduled. However, work hardening increased the Injured Worker's cervical symptoms and the plan was interrupted in November of 2001 and closed on 01/30/2002. No other attempts to be vocationally retrained have been made.

The evidence on file indicates the Injured Worker has not returned to work since the date of injury in this claim. The Injured Worker began receiving Social Security Disability benefits in 2005 and the testimony at hearing indicated this was predicated on the conditions in this claim as well as the Injured Worker's coronary and low back problems. Temporary total compensation was last paid in this claim on 09/01/2010 and was terminated as a result of the physician of record indicating the allowed conditions had reached maximum medical improvement.

No evidence of any attempt to be retrained in the last eleven years has been presented. The Injured Worker indicated on the IC-2 application he is not interested in participating in vocational rehabilitation.

Permanent total disability is a compensation "of last resort, to be awarded only when all reasonable avenues of accomplishing a return to sustained remunerative employment have failed." State ex rel. Wilson v. Industrial Commission (1997), 80 Ohio St.3d 250, 253. The Injured Worker's residual functional capacity for nearly a full range of sedentary work, middle age, ability to learn, college level education, and varied work experience make him a candidate for rehabilitation and re-entry into the workforce. The failure to fully participate in vocational rehabilitation, and the failure to attempt to explore vocational rehabilitation in the recent past, are significant factors in denying this benefit of last resort.

The opinions of Drs. Murphy and Borrillo limit the Injured Worker to less than a full range of sedentary work. The Injured Worker has an Associate's Degree in Business Management and a varied work history which includes self-employment. These factors would enable the Injured Worker

to do a broad range of sedentary work beyond entry-level positions. Absent any attempts at vocational rehabilitation or retraining within his specific restrictions, the Injured Worker cannot be considered to [be] permanently and totally disabled.

Based on the above-listed physical and psychological capacities and non-medical disability factors, the Staff Hearing Officer finds the Injured Worker's disability is not total, and that the Injured Worker is capable of engaging in sustained remunerative employment, or being retrained to engage in sustained remunerative employment. Therefore, the Injured Worker's request for an award of permanent disability benefits is denied.

{¶ 34} 20. On August 29, 2013, relator, Kenneth R. Hensley, filed this mandamus action.

Conclusions of Law:

{¶ 35} Relator endeavors to present three issues:  (1) is the report of Dr. Borrillo some evidence upon which the commission can rely to determine that relator has the residual functional capacity to perform sedentary work; (2) is the report of Dr. Murphy some evidence upon which the commission can rely to determine that relator has a residual functional capacity that permits work, but precludes employment as a truck driver; and (3) did the commission abuse its discretion in its consideration of the non-medical factors.

{¶ 36} The magistrate finds:  (1) the report of Dr. Borrillo is some evidence upon which the commission can and did rely in determining that relator has the residual functional capacity to perform sedentary work; (2) relator has waived his right to challenge the report of Dr. Murphy in this action; and (3) the commission did not abuse its discretion in its consideration of the non-medical factors.

{¶ 37} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### First Issue

{¶ 38} Ohio Adm.Code 4121-3-34 sets forth the commission's rules for the adjudication of PTD applications.  Ohio Adm.Code 4121-3-34(B) sets forth definitions.

{¶ 39} Ohio Adm.Code 4121-3-34(B)(2) is captioned "Classification of physical demands of work." Thereunder, the code provides:

> (a) "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 40} In *State ex rel. O'Brien v. Cincinnati, Inc.*, 10th Dist. No. 07AP-825, 2008-Ohio-2841, at ¶ 9-10, this court summarized relevant case law:

> Initially, it is important to note that a medical report that identifies the worker's exertional category as defined in the Ohio Administrative Code and does not include additional opinions regarding specific restrictions on sitting, lifting, standing, and so forth is still sufficient to constitute some evidence. *State ex rel. Ace v. Toyota of Cincinnati Co.*, Franklin App. No. 03AP-517, 2004-Ohio-3971, at ¶ 30. Thus, a medical report may constitute evidence on which the commission may rely when the physician simply opines the claimant was limited to "sedentary work" and provides no further details of the claimant's various functional restrictions. *Id.*
>
> On the other hand, the commission cannot simply rely on a physician's "bottom line" identification of an exertional category without examining the specific restrictions imposed by the physician in the body of the report. See *State ex rel. Owens-Corning Fiberglas Corp. v. Indus. Comm.,* Franklin App. No. 03AP-684, 2004-Ohio-3841; and *State ex rel. Howard v. Millennium Inorganic Chemicals*, Franklin App. No. 03AP-637, 2004-Ohio-6603. In both *Owens-Corning* and *Howard,* the doctor indicated that the injured worker could perform at a certain strength level, and yet, the rest of the report indicated greater restrictions on the injured worker that would actually render him incapable of performing the strength level work that the doctor had indicated he could perform. This court held in *Owens-Corning* and *Howard* that the commission cannot simply rely upon a determination that an injured worker can perform at a certain strength level; rather, the commission

must review the doctor's report and actually make certain that any physical restrictions the doctor listed correspond with an ability to actually perform at the exertional level indicated by the doctor.

{¶ 41} In challenging the report of Dr. Borrillo, relator argues:

Dr. Borrillo reported that Relator is capable of sedentary employment; however, Relator is restricted from "performing above shoulder height tasks, and is unable to extend his neck to look upward." * * * ["]Given his allowed conditions, no commercial driving is also recommended." *Id.* These restrictions are inconsistent with sedentary work activity, as defined under OAC §4121-3-34(B)(2), in that Relator would not be able to "frequently lift or otherwise move objects exerting a negligible amount of force." These restrictions described by Dr. Borrillo equate to a less than sedentary physical demand classification. An injured worker must be able to "exert up to ten pounds of force occasionally in order to lift or otherwise move objects." Arguably, this would include performing above-shoulder height tasks, which Relator is incapable of performing.

(Relator's brief, 19-20.)

{¶ 42} The magistrate disagrees with relator's argument. To begin, relator incorrectly suggests that the performance of sedentary work requires that the injured worker be able to exert up to ten pounds of force occasionally. Clearly, the definition provides that sedentary work is performed when the injured worker can exert a "negligible amount of force frequently * * * to lift, carry, push, pull, or otherwise move objects."

{¶ 43} Dr. Borrillo did not restrict relator from exerting up to ten pounds of force occasionally nor did he restrict relator from exerting a negligible amount of force frequently. However, Dr. Borrillo did restrict above-shoulder height tasks and he did state that relator is unable to extend his neck to look upward.

{¶ 44} In the magistrate's view, there is no obvious reason why the above- shoulder restriction and the neck extension restriction would anatomically preclude exerting up to ten pounds of force occasionally or exerting a negligible amount of force frequently. Thus, relator's argument is unpersuasive.

{¶ 45} It is further the magistrate's view that the hearing administrator accurately stated in his May 10, 2013 letter:

> The Hearing Administrator finds that the sedentary work classification is silent with respect to the ability to perform above-shoulder height tasks, and further, the inability to perform such tasks does not render an Injured Worker incapable of all sustained remunerative employment.

{¶ 46} Based upon the forgoing analysis, the magistrate must conclude that the report of Dr. Borrillo is indeed some evidence upon which the commission can and did rely in determining that relator has the residual functional capacity to perform sedentary work.

## Second Issue

{¶ 47} As earlier noted, relator endeavors here to eliminate evidentiary reliance upon the report of Dr. Murphy. However, relator has waived any right to challenge the report of Dr. Murphy as some evidence upon which the commission can rely.

{¶ 48} Here, in his merit brief, relator asserts that the commission's reliance upon the report of Dr. Murphy was an abuse of discretion because allegedly it is not "some evidence." (Relator's brief, 28, 34.) Relator claims that the report of Dr. Murphy "contradicts previous medical reports and has internal inconsistencies that should not have been relied upon by the Commission." (Relator's brief, 34.)

{¶ 49} In its merit brief, the commission states:

> As to the allowed psychological condition, Hensley does not contest the commission's reliance upon the report from Dr. Murphy, who opined that there is mild impairment from the allowed psychological condition.

(Respondent's brief, 13.)

{¶ 50} In his reply brief, relator does not take issue with the commission's statement as above quoted, nor is there any further challenge to the report of Dr. Murphy. Thus, it is not clear whether relator intended to drop his challenge to the report of Dr. Murphy.

{¶ 51} The August 28, 2012 stipulation of dismissal that relator entered into in case No. 11AP-886 provides that the commission "shall select another physician, who shall conduct an examination of Hensley and issue a medical report concerning the issue

of whether Hensley is permanently and totally disabled as a result of the allowed *physical* conditions in the claim. No other new or additional evidence will be submitted regarding the November 15, 2010 IC-2 application." (Emphasis added.) Significantly, the stipulation of dismissal does not provide that the commission shall select another physician to conduct an examination regarding the allowed psychological condition.

{¶ 52} Moreover, in the SHO's order of September 21, 2012 that endeavors to implement the agreement of the parties as set forth in the stipulation of dismissal, the SHO orders that the report of Dr. Kuhlman shall not be considered in the adjudication of the PTD application. There is no mention of the report of Dr. Murphy, and relator never objected to the SHO's order of September 21, 2012 as failing to set forth the appropriate instructions for the implementation of the agreement set forth in the August 28, 2012 stipulation of dismissal.

{¶ 53} In *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78 (1997), the Supreme Court of Ohio, stated:

> "Ordinarily, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed." *Goldberg v. Indus. Comm.* (1936), 131 Ohio St. 399, 404, 6 O.O. 108, 110, 3 N.E.2d 364, 367. See, also, *State ex rel. Moore v. Indus. Comm.* (1943), 141 Ohio St. 241, 25 O.O. 362, 47 N.E.2d 767, paragraph three of the syllabus; *State ex rel. Gibson v. Indus. Comm.* (1988), 39 Ohio St.3d 319, 320, 530 N.E.2d 916, 917 (rule that issues not previously raised are waived is applicable in an appeal from a denial of a writ of mandamus). Nor do appellate courts have to consider an error which the complaining party "could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." *State v. Williams* (1977), 51 Ohio St.2d 112, 117, 5 O.O.3d 98, 101, 364 N.E.2d 1364, 1367.
>
> These rules are deeply embedded in a just regard to the fair administration of justice. They are designed to afford the opposing party a meaningful opportunity to respond to issues or errors that may affect or vitiate his or her cause. Thus, they do not permit a party to sit idly by until he or she loses on one ground only to avail himself or herself of another on appeal. In addition, they protect the role of the courts and the dignity of the proceedings before them by imposing upon counsel the duty to exercise diligence in his

or her own cause and to aid the court rather than silently
mislead it into the commission of error.

*Id.* at 81.

{¶ 54} Clearly, relator cannot challenge in this action the report of Dr. Murphy as failing to constitute some evidence upon which the commission can rely in determining residual functional capacity as to the allowed psychological condition. Relator has had a previous opportunity to challenge Dr. Murphy's report and has failed to avail himself of the opportunity. *Quarto Mining.*

### Third Issue

{¶ 55} As earlier noted, the third issue is whether the commission abused its discretion in its consideration of the non-medical factors.

{¶ 56} In the SHO's order of June 27, 2013, the SHO states:

> The Injured Worker also obtained a two-year Associate's Degree in Business Management. This education was not reported on the IC-2 application and the Injured [Worker] indicated on that form that he cannot read, write, or perform basic math very well. The associate's degree was reported to a vocational counselor in 2001.

{¶ 57} Here, in his brief, relator asserts:

> Relator did not earn an Associate's degree in Business Management as erroneously stated by the SHO; rather, he attempted to attend college but ultimately did not complete the program.

(Relator's brief, 30.)

{¶ 58} In his reply brief, relator asserts that the SHO's order of June 27, 2013 contains a mistake of fact. Relator argues:

> The Staff Hearing Officer did not indicate in the Order any attempt to clarify the competing statements from Relator and the vocational counselor. In fact, Relator did attempt to obtain this degree but ultimately did not finish the curriculum. Had the Industrial Commission been aware that Relator did not earn an Associate's Degree, it is possible that it would have evaluated the non-medical *Stephenson* factors differently.

(Relator's reply brief, 10.)

{¶ 59} The record contains a document captioned "Individualized Vocational Rehabilitation Plan" on bureau form BWC-2952. This two-page document is dated December 18, 2001. On the form, a bureau "Vocational Case Manager" wrote:

> [Injured Worker's] educational background includes: securing his High School diploma and two-year associate's degree in Business Management.

{¶ 60} As the court states in *State ex rel. Ewart v. Indus. Comm.*, 76 Ohio St.3d 139, 141 (1996), "[t]he freedom to independently evaluate nonmedical factors is important because nonmedical factors are often subject to different interpretation."

{¶ 61} The December 18, 2001 individualized vocational rehabilitation plan is clearly some evidence supporting the finding in the SHO's order of June 27, 2013 that relator actually obtained a two-year associate's degree in business management. Assertions of counsel in relator's briefs to the contrary are not evidence. Moreover, relator fails to identify the so-called "competing statements from Relator" that allegedly dispute the December 18, 2001 statement of the vocational rehabilitation case manager. (Relator's reply brief, 10.)

{¶ 62} Given the above scenario, the commission did not abuse its discretion in finding that relator obtained a two-year associate's degree in business management. *Ewart.*

{¶ 63} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).